**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BENNIE JESSUP, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil No. 13-cv-0248 (KBJ) <br> ) |
| PROGRESSIVE FUNDING, *et al.*, | ) <br> ) |
| Defendants. | ) <br> ) |

## MEMORANDUM OPINION

Plaintiff Bennie Jessup ("Jessup") purchased property located at 1855 Channing Street, NE in Washington, DC (the "Property") with funds from a $271,200 residential mortgage loan from Progressive Funding. (Compl. To Quiet Title, Ex. A to Notice of Removal, ECF No. 1-1 ("Compl."), ¶¶ 7-8.) At some point after Jessup defaulted and foreclosure proceedings were initiated, Jessup filed a complaint for "quiet title" in the Superior Court of the District of Columbia against Progressive Funding and U.S. Bank, N.A., as trustee for Banc of America Funding Corporation Mortgage Pass-Through Certificates Series 2006-G ("U.S. Bank," and collectively, "Defendants"). Proceeding *pro se*, Jessup alleges that Defendants do not have any lawful ownership or security interest in the Property because Progressive Funding securitized the mortgage note that Jessup executed to fund the purchase of the Property. (*Id.* ¶ 2.) Jessup also asserts that, because she has not found any record of the assignment of the mortgage note and associated deed of trust to U.S. Bank, "the Deed was NEVER assigned to or owned by [U.S. Bank]." (*Id.* ¶ 13 (emphasis in original).)

U.S. Bank removed Jessup's complaint to federal court (Notice of Removal, ECF No. 1), and then, filed a motion to dismiss it. (*See* Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 4 at 4-16 ("Def.'s Mem.").)[1] U.S. Bank argues that Jessup's complaint fails to state a claim upon which relief can be granted primarily because Jessup has not pled facts sufficient to demonstrate that there is any actual conflict between the parties with respect to ownership of the Property, nor has she established superior title to the Property in a manner that would give rise to a viable quiet title claim. (*Id.* at 4-6.) Because this Court agrees that Jessup's complaint fails to allege any actual controversy or plausible legal basis for recovery, and in any event, the complaint was improperly filed because Jessup failed to satisfy a contractual condition precedent, U.S. Bank's motion is **GRANTED** and the case will be **DISMISSED** as to both Defendants in its entirety and with prejudice. A separate order consistent with this opinion will follow.

I. **FACTUAL BACKGROUND**

The complaint contains very little factual information, but what can be gleaned about the relevant events is as follows.

Jessup purchased the Property on March 6, 2006, utilizing a $271,200 residential mortgage loan that she had obtained from Progressive Funding. (Compl. ¶ 7.) To secure the loan, Jessup signed an Adjustable Rate Note. (*Id.*, Ex. A, ECF No. 1-1 at 8-12 ("Note").) The Note identifies Progressive Funding as the Lender and attaches a

---

[1] U.S. Bank removed the matter pursuant to 28 U.S.C. § 1441(a), on the grounds that (1) there is complete diversity of citizenship between Jessup as a citizen of the District of Columbia on one hand, and Progressive Funding and U.S. Bank as citizens of states other than the District of Columbia on the other, and (2) the amount in controversy exceeds $75,000 because the claims arise out of the $271,200 mortgage loan. (Notice of Removal, ECF No. 1, ¶¶ 7-11.)

Deed of Trust to secure Jessup's obligation. (Compl. ¶ 8; *id.*, Ex. A, ECF No. 1-1 at 36-61 ("Deed").) In signing the Note, Jessup agreed to make monthly payments until she had repaid all amounts due under the Note. (*See* Note ¶ 3.) In addition, the Note expressly informs Jessup that Progressive Funding has the right to transfer the Note. (*See id.* ¶ 1 ("I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the Note Holder.").) The Deed similarly names Progressive Funding as the lender and also designates a local attorney as trustee. (*See* Deed at 1, 3.) By signing the Deed, Jessup "irrevocably grant[ed] and convey[ed]" the Property, in trust and with power of sale, to the trustee as security for her mortgage. (*Id.* at 3.)[2] The express terms of the Deed allow Progressive Funding to sell the Note, together with the Deed, without prior notice to Jessup. (*Id.* ¶ 20.) The Deed further bars Jessup from commencing any litigation related to the Deed without providing the other party with notice and a reasonable opportunity to cure. (*Id.*)

Jessup's complaint alleges that Progressive Funding securitized the Note on July 31, 2006, and that the securitization "extinguished Progressive's rights as the 'note holder'" such that "Progressive is no longer entitled to payment under the subject Note." (Compl. ¶ 9; *see also id.* ¶ 10 ("[T]he securitization of Plaintiff's Note destroyed the Note because it was turned into a security registered with the SEC; the Note no longer exists.").) Jessup's complaint also maintains that, while Progressive Funding may have desired to assign any interest that it had in the Note and Deed to

---

[2] A power of sale provision empowers the named trustee, upon default, to advertise and sell the property at public auction without court involvement. "The District of Columbia is a non-judicial foreclosure jurisdiction, which allows foreclosure pursuant to a power of sale provision contained in any deed of trust." *See Carter v. Bank of Am., N.A.*, 888 F. Supp. 2d 1, 14 (D.D.C. 2012) (citation and quotation marks omitted).

3

other entities, "there is no record of the Plaintiff's Note and Deed being properly indorsed and/or assigned together to the Trust [U.S. Bank] by the Trust closing date of July 31, 2006." (*Id.* ¶ 13.) "Therefore," Jessup reasons, "the Deed was NEVER assigned to or owned by the Trust." (*Id.*) The complaint makes no mention of any default regarding Jessup's obligation to make payments under the Note, nor does it state anything about foreclosure of the Property after the Note and Deed were executed.

According to facts stated in U.S. Bank's Motion to Dismiss and its attachments, Jessup's Note was indeed securitized, and the Note and Deed lawfully changed hands at least twice after they were executed.[3] Progressive Funding endorsed the Note and assigned the Deed to Wells Fargo. (*See* Def.'s Mem., Ex. A, Assignment of Deed of Trust, recorded in the land records of the District of Columbia as Instrument No. 2007090097, ECF No. 4-1 at 2-3; *id.*, Ex. B, Adjustable Rate Note, ECF No. 4-1 at 5-11 (including endorsement attachment wherein Progressive Funding endorsed the Note to Wells Fargo).) Wells Fargo subsequently endorsed and assigned the Note and Deed to U.S. Bank. (*See* Def.'s Mem., Ex. C, Certificate of Assignment, recorded in the land records of the District of Columbia as Instrument No. 2009056283, ECF No. 4-1 at 13-14.) According to U.S. Bank's motion, publicly-recorded D.C. land records further

---

[3] U.S. Bank attaches three documents to its motion to dismiss: (1) the assignment of the Deed from Progressive Funding to Wells Fargo Bank, N.A. ("Wells Fargo") (Def.'s Mot., Ex. A, ECF No. 4-1 at 2-3); (2) a copy of the Note, including an additional endorsement page that is missing from the copy Jessup attaches to her complaint (*id.*, Ex. B, ECF No. 4-1 at 5-11); and (3) a certificate assigning the Deed and Note from Wells Fargo to U.S. Bank (*id.*, Ex. C, ECF No. 4-1 at 13-14). The first and third attachment are documents that were filed with the D.C. Recorder of Deeds and are therefore public records. This means that this Court can take judicial notice of them without converting U.S. Bank's motion to dismiss into one for summary judgment. *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). The Court further finds that the second document that U.S. Bank has attached to its motion—the Note with the endorsement page—is incorporated by reference into the complaint, given that Jessup challenges the sale, assignment, and transfer of the Note (*see* Compl. ¶ 2). *See also Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133-34 (D.D.C. 2013). Accordingly, the Court will consider all of the documents U.S. Bank attaches to its motion to dismiss without converting the motion into one for summary judgment.

reveal that Jessup defaulted on the mortgage and that U.S. Bank then initiated foreclosure proceedings in 2009 and again in 2010. (*See* Def.'s Mem. at 2-3 (citing Notice of Foreclosure Sale of Real Property or Condominium Unit dated May 21, 2009, recorded in the land records of the District of Columbia as Instrument No. 2009053611; Notice of Foreclosure Sale of Real Property or Condominium Unit dated March 3, 2010, recorded in the land records of the District of Columbia as Instrument No. 2010018051).)[4]

On January 31, 2013, Jessup filed the instant complaint in the Superior Court for the District of Columbia, seeking a declaratory judgment establishing her ownership of the Property and cancelling the Note and Deed. (Compl. ¶¶ 17-18.) As mentioned above, she argues that securitization of her the Note "destroyed the Note because it was turned into a security registered with the SEC," which in turn rendered the Deed invalid. (*Id.* ¶ 10.) Jessup further argues that U.S. Bank does not own the Deed because a "Voluntary Liens Report" that she attaches to her complaint does not reflect that Progressive Funding assigned the Note and Deed to U.S. Bank in conjunction with the July 31, 2006, securitization. (*Id.* ¶ 13; *id.*, Ex. C, ECF No. 1-1 at 13-22.)

After removing the complaint to this Court on February 26, 2013, U.S. Bank filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).[5] U.S. Bank maintains that Jessup's complaint fails to allege facts establishing that there is any genuine controversy regarding Progressive Funding's securitization and

---

[4] Jessup does not address this representation in her opposition to U.S. Bank's motion; consequently, there appears to be no dispute regarding the default or the foreclosures. While it is unclear from the record why two separate foreclosure proceedings were initiated, that question is irrelevant to the resolution of this motion.

[5] U.S. Bank is the only defendant that has noticed an appearance or filed a responsive pleading in this matter. This is presumably because, according to the docket, Jessup has not effected service on Progressive Funding to date.

assignment of the Note and Deed. (Def.'s Mem. at 4-5.) The bank argues further that Jessup's theories that securitization of the Note and Deed invalidated those documents, or that prior holders improperly assigned the documents to U.S. Bank, are legally and factually baseless. (*Id.* at 5-7.) U.S. Bank also asserts that the text of the relevant documents doom Jessup's complaint, both because the Note and Deed expressly permit the transfers that Jessup now questions, and also because Jessup failed to plead facts showing that she has satisfied the Deed's pre-litigation notice requirement. (*Id.* at 7, 10-12.) In opposition to the motion, Jessup does not respond directly to any of U.S. Bank's arguments. Instead, she argues that "[t]he Complaint contains cognizable legal theories, sufficient facts to support cognizable legal theories, and seeks remedies to which Plaintiff is entitled." (Pl.'s Opp'n to Mot. to Dismiss, ECF No. 6 ("Pl.'s Opp'n"), at 2 (citations omitted).) Jessup also states that "Plaintiff can prove the facts that are alleged in the claim during trial." (*Id.*)

## II.     LEGAL STANDARD FOR A RULE 12(b)(6) MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must comply with Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This requirement is meant to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

"Although 'detailed factual allegations' are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Busby*, 932 F. Supp. 2d at 133 (quoting *Twombly*, 550 U.S. at 555). In other words, the plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Mere conclusory statements" of misconduct are not enough to make out a cause of action against a defendant. *Id.* Rather, a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court must view the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Busby*, 932 F. Supp. 2d at 134 (citation omitted). Although the court must accept as true the facts in the complaint, it need not accept inferences a plaintiff draws if the facts set out in the complaint do not support such inferences. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor is the court "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted). Significantly, the pleadings of *pro se* parties are to be "liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted). "This benefit is not, however, a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. U.A.E.*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009) (citation omitted). Rather, "even

though a *pro se* complaint must be construed liberally, the complaint must still 'present a claim on which the Court can grant relief.'" *Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013) (quoting *Chandler v. Roche*, 215 F. Supp. 2d 166, 168 (D.D.C. 2002)); *see also Moore v. Motz*, 437 F. Supp. 2d 88, 90 (D.D.C. 2006) (noting that a court need not accept "[e]ven a *pro se* plaintiff's inferences" if the facts set out in the complaint do not support those inferences) (citation omitted); *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981) (same).

### III. ANALYSIS

Jessup requests two things in the case. First, she seeks a court order declaring that "the subject Deed of Trust [is] null and void [and] cancelling the Deed of Trust of record." (Compl. ¶ 18(d).) Second, she seeks a declaration "quieting title to the property owned by Plaintiff against Defendants and all persons claiming under Defendants." (*Id.*) But, as noted above, a complaint only "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And, as U.S. Bank persuasively argues, the complaint in this case falls woefully short of this standard. To summarize what is explained further below, Jessup has not alleged any facts that come anywhere close to establishing either that U.S. Bank or Progressive Funding has engaged in any misconduct with respect to Jessup's Note and Deed. Furthermore, Jessup's request for declaratory relief is clearly based on a series of mistaken legal assumptions, such that even if the facts alleged in the complaint are true, Jessup would not be entitled to the relief she seeks. Consequently, U.S. Bank's

motion to dismiss must be granted, and this Court will also *sua sponte* dismiss the claims against Progressive Funding.

**A. Jessup's Complaint Fails To State A Claim Upon Which Relief Can Be Granted**

  1. <u>Jessup's Allegations Regarding The Securitization And Assignment Of The Note</u>

Jessup's entire complaint turns on the undisputed fact that Progressive Funding securitized her mortgage note to U.S. Bank on July 31, 2006. (Compl. ¶ 9.) From this single fact, Jessup leaps to the legal conclusion that "an actual controversy has arisen and now exists," regarding her obligations under the Note and her rights to the Property. (*Id.* ¶ 17.) But she points to no facts, or any law for that matter, that connect securitization and assignment of the Note to this supposed "controversy," nor has she demonstrated any basis upon which this Court can award the relief she seeks.

That the complaint lacks any factual or legal basis is evident from the outset insofar as Jessup has not identified any statute or contractual obligation that Progressive Funding's conduct in securitizing the Note, and the subsequent assignments of the Note and Deed to Wells Fargo and then U.S. Bank, could allegedly have violated. At a minimum, under Federal Rule of Civil Procedure 8, a plaintiff must not only allege that the defendant committed some act that the plaintiff dislikes, but must also state specifically the particular legal principle that gives rise to a reasonable inference that the detested conduct was unlawful. *See Ponder v. Chase Home Finance, LLC*, 865 F. Supp. 2d 13, 21 (D.D.C. 2012) (complaint that did not specify which subsection of the Code of Federal Regulations defendant's conduct allegedly violated did not "provide enough information to 'raise a right to relief above the speculative level.'") (quoting

9

*Twombly*, 550 U.S. at 555). Here, Jessup identifies no statute or common law right that gives rise to her claim. Moreover, Jessup even fails to assert that there is any conflict between the parties as a result of the securitization and subsequent assignments. For example, there are no allegations in the complaint that Jessup defaulted on her mortgage because she believed that she no longer had any obligation to pay it, and indeed, the foreclosure is not even mentioned, much less asserted as a basis for Jessup's bald conclusion that a controversy now exists. In short, Jessup articulates nothing more than theoretical harm, unsupported by law or fact, and as U.S. Bank argues, this is manifestly insufficient to give rise to the conclusion that the complaint presents a controversy for this Court to resolve. *Cf. Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 735 (D.C. Cir. 1987) ("Since the judicial power is limited to cases and controversies, federal courts cannot decide purely abstract or theoretical claims, or render advisory opinions.") (citation omitted).

        2.        <u>Jessup's Assertion That The Deed Of Trust Is Invalid</u>

Significantly, even if Jessup's complaint was retooled to allege sufficiently that there is an existing controversy between Jessup and Defendants, to the extent that Jessup is seeking a Court order that invalidates the Deed, she has provided no valid legal basis for doing so. Jessup's request for such an order rests solely on her assertion that "securitization of Plaintiff's Note destroyed the Note" (Compl. ¶ 10), which in turn rendered the Deed invalid (*id.* ¶ 11). Courts across the country have already uniformly rejected this argument. *See, e.g.*, *Flores v. GMAC Mortgage, LLC*, 12cv794, 2013 WL 2049388, at *2 (N.D. Cal. May 14, 2013) ("Courts have consistently rejected" the theory that securitization of a note strips a holder of the ability to assign the deed of

trust); *Boyter v. Wells Fargo Bank, N.A.*, No. 11cv03943, 2012 WL 1144281, at *5 (N. D. Cal. Apr. 4, 2012) (dismissing wrongful foreclosure claim based on theory of invalid assignment of the deed of trust due to securitization of the promissory note); *Velez v. The Bank of N.Y. Mellon,* 10cv468, 2011 WL 572523, *4 (D. Haw. Feb. 15, 2011) ("The court also rejects Plaintiff's contention that securitization in general somehow gives rise to a cause of action[.]"); *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1099 (E. D. Cal. 2010) ("The argument that parties lose their interest in a loan when it is assigned to a trust pool has also been rejected by many district courts."); *Upperman v. Deutsche Bank Nat'l Trust Co.*, 10cv149, 2010 WL 1610414, at *3 (E. D. Va. Apr. 16, 2010) (dismissing claims that were based on an "erroneous legal theory that the securitization of a mortgage loan renders a note and corresponding security interest unenforceable and unsecured"); *Chavez v. Cal. Reconveyance Co.*, 10cv325, 2010 WL 2545006, at *2 (D. Nev. June 18, 2010) ( "The alleged securitization of Plaintiffs' loan did not invalidate the Deed of Trust[.]").

Like plaintiffs in these other cases, Jessup points to no law establishing that securitization of a loan somehow gives rise to any cause of action, let alone one that would authorize this Court to invalidate the Note and Deed. *See, e.g.*, *Haskins v. Moynihan*, 10cv1000, 2010 WL 2691562, at *2 (D. Ariz. July 6, 2010) (denying a request for injunctive relief based on claim of improper securitization where plaintiffs failed to explain why securitization of their mortgage note entitled them to any form of legal relief); *Lariviere v. Bank of N.Y. as Tr.*, 09cv515, 2010 WL 2399583, at *4 (D. Me. May 7, 2010) ("In the final analysis [plaintiffs'] complaint against these three defendants is nothing more than a twenty-seven page hodge podge of conclusory

allegations about the process of securitizing subprime mortgages and reselling them to investors. Many people in this country are dissatisfied and upset by that process, but it does not mean that [plaintiffs] have stated legally cognizable claims against these defendants in their amended complaint."), *report and recommendation adopted*, 2010 WL 2399556 (D. Me. June 11, 2010). And this Court sees no reason to depart from the reasoned judgment and collective wisdom of the many prior jurists who have considered this issue. Accordingly, this Court concludes that Jessup's argument that she is entitled to a declaratory judgment invalidating the Note and Deed on the basis of the securitization of those instruments is legally baseless.

> 3. <u>Waiver Of Right To Challenge Transfer Of Note And Deed</u>

Finally, even if the securitization and assignment of Jessup's Note and Deed without notice to her could be considered wrongful, and even if Jessup was legally entitled to avenge that alleged wrong by filing a civil action for a declaratory judgment invalidating the Note and Deed, Jessup has clearly waived the right to challenge the securitization and assignment at issue in this case. Both the Note and the Deed, which Jessup signed when she obtained the $271,000 mortgage from Progressive Funding, expressly authorize Progressive Funding to transfer the executed instruments to another party. (*See* Note ¶ 1 ("I understand that the Lender may transfer this note."); Deed ¶ 20 ("The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.").) Consequently, Jessup cannot now be heard to complain that the Note and Deed were reformulated and transferred from Progressive Funding to Wells Fargo to U.S. Bank, nor can she reasonably maintain that, as a result of these actions, the Note and Deed have been
12

rendered invalid. *See Flores*, 2013 WL 2049388, at *3 (dismissing claims arising from allegedly improper securitization and sale of note in part because note and deed of trust authorized sale without notice to borrower).

> **B. The Complaint Fails To Allege Facts That Permit An Inference That Title To The Property Is In Doubt**

Jessup not only seeks to have the Note and Deed rendered null and void, she also asks this Court to issue an order declaring her the rightful owner of the Property, notwithstanding the competing property interests of the entity that now holds the Note and Deed (U.S. Bank). It is well established that courts may hear a common law action to quiet title in order to prove title, secure title, "or to remove obstacles which hinder its enjoyment." *In re Tyree,* 493 A.2d 314, 317 (D.C. 1985) (quoting *Sharon v. Tucker*, 144 U.S. 533, 544 (1892)). However, Jessup's request for a declaration quieting title in her favor is fatally flawed for at least three reasons. First, because her claim for quite title stems from her mistaken belief that the Note and Deed are invalid and thus any claim the U.S. Bank has to the Property was extinguished. (The Court has already rejected this argument, *see supra* Part III.A., and will not revisit it here). Second, Jessup maintains that U.S. Bank has no interest in the Property because the Note and Deed were never properly assigned to it, but this proposition defies both fact and law. Finally, the Court concludes that Jessup's request for a declaration quieting title in her favor fails because she pleads no facts demonstrating that she has superior title to the Property.

> 1. <u>Jessup's Argument That The Deed Was Never Properly Assigned</u>

Jessup attaches to her complaint a document entitled "Voluntary Liens Report," which contains no mention of the assignment of the Note and Deed to U.S. Bank.

13

(Compl. ¶ 13; *id.*, Ex. C, ECF No. 1-1 at 13-22.)  The complaint says nothing about the genesis of this report, the scope of the information it contains, or how Plaintiff obtained this document.[6]  Nevertheless, Jessup argues that this report conclusively establishes that U.S. Bank never recorded the assignment, which in turn renders the assignment invalid.  (Compl. ¶ 13.)  Even when the Court credits the complaint's allegation that the assignment does not appear on the Voluntary Liens Report, however, the Court need not—and does not—accept the unsupported inference that Jessup draws from this fact; namely, that the assignment was in fact never recorded and, as a result, the assignment is therefore legally invalid.  *See Kowal*, 16 F.3d at 1276.  To the contrary, the relevant public records indisputably establish that the D.C. Recorder of Deeds recorded both Progressive Funding's assignment of the Note and Deed to Wells Fargo, and Wells Fargo's subsequent assignment of the Note and Deed to U.S. Bank.  (*See* Def.'s Mem., Ex. A, Assignment of Deed of Trust, ECF No. 4-1 at 2-3; *id*, Ex. C, Certificate of Assignment, ECF No. 4-1 at 13-14.)

What is more, even if U.S. Bank's recording of the assignment of the Note and Deed were somehow ineffective, that would not entitle Jessup to a declaration quieting title to the Property in her favor, for two independent reasons.  First, Jessup has not pled facts showing that she is either a party to, or an intended beneficiary of, the assignment agreement.  Accordingly, Jessup has not established that she has standing to challenge the validity of any assignment of the Note and Deed.  *See, e.g.*, *Ward v. Sec. Atl. Mortg. Elec. Registration Sys.*, 858 F. Supp. 2d 561, 568 (E.D.N.C. 2012) (plaintiffs did not have standing to declare an assignment void where they failed to

---

[6] A disclaimer at the end of the document indicates that a company called "HomeInfoMax" created this report.  (Voluntary Liens Report at 10.)

allege they were parties to the assignment or intended beneficiaries) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *Wolf v. Fannie Mae*, 830 F. Supp. 2d 153, 162 (W.D. Va. 2011) (finding that the borrower had no standing to challenge the validity of an assignment where "she was not a party to the assignment, and the assignment did not affect her underlying obligation to make timely payments"), *aff'd*, 512 F. App'x 336 (4th Cir. 2013) (per curiam). Second, and equally significant, under District of Columbia law, an assignment of a note and deed is valid *even if the assignee never records the assignment*. *See, e.g.*, *Duffy v. Bank of Am., N.A.*, 13cv696, 2014 WL 340711, at *3 (D.D.C. Jan. 30, 2014) ("There is no requirement that an assignment of a note be recorded to be valid."); *Robinson v. Deutsche Bank Nat. Trust Co.*, 932 F. Supp. 2d 95, 104 (D.D.C. 2013) ("District of Columbia law does not require an assignment of a note or deed of trust to be recorded in order for the transfer to be valid."). As D.C.'s highest court recently explained,

> [g]enerally speaking, the recordation process is designed to protect a property interest against subsequent bona fide purchasers, the risk a property holder takes by failure to record. It is not generally intended to otherwise affect property rights, which include the right of holders to foreclose on security interests.

*Rose v. Wells Fargo Bank, N.A.*, 73 A.3d 1047, 1052 (D.C. 2013) (citations omitted).

Because (1) Jessup has not shown, and indeed cannot establish, that the assignment in this matter was not recorded, and (2) even so, failure to record does not invalidate an assignment under D.C. law, Jessup has not and cannot state a cause of action to invalidate the Note and Deed and to obtain clear title to the Property on the ground that U.S. Bank failed to record the assignment of the Note and Deed. *See Diaby v. Bierman*, 795 F. Supp. 2d 108, 112 (D.D.C. 2011) (dismissing action for quiet title

15

alleging failure to record because "a failure to record an assignment does not give rise to a cause of action") (citing D.C. Code § 42-801); *see also Leake v. Prensky*, 798 F. Supp. 2d 254, 257 (D.D.C. 2011) (concluding that a bank could enforce a note's foreclosure provision, even though it did not record the note's assignment, because "[t]he D.C. Code provides that '[t]ransfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument,' and under D.C. law the Note's transfer carries with it the security for its payment." (citing D.C. Code § 28:3-203(b)). Put another way, even if it is true that U.S. Bank did not record Wells Fargo's assignment of Jessup's Note and Deed with the D.C. Recorder of Deeds, the bank did not forfeit any rights to collect under the Note or any interest in the Property.

       2.       Jessup's Nonexistent Allegations Regarding Superior Title to the Property

Successful quiet title actions require a plaintiff to establish that she has superior title to the property. *See* 74 C.J.S. Quieting Title § 77 (2014) ("[T]he plaintiff has the burden of showing a title or right superior to that of the defendant as a prima facie case[,]" which means that "the plaintiff [must] at least prove a title better than that of the defendant, which, if not overcome by the defendant, is sufficient."). Jessup's complaint contains no allegation that she has superior title to the property, let alone any facts that would support such an allegation. Indeed, Jessup acknowledges that she executed the Deed (Compl. ¶ 8), and in the Deed Jessup "irrevocably grant[ed] and convey[ed]" the Property, in trust and with power of sale, to the named trustee as security for her mortgage. (Deed at 3.) Jessup alleges no facts showing that this conveyance was invalid in the first instance, or that she has satisfied her obligations under the Note and Deed such that her mortgage is discharged. *See Diaby*, 795 F. Supp.

16

2d at 112 (dismissing action for quiet title where plaintiff failed "to identify any facts alleged in his complaint that could give rise to a right to [a quiet title declaration].") Moreover, the record evidence establishes that Jessup has defaulted on her obligation to make mortgage payments, and thus likely has forfeited any right to redeem the deed to her property, which undercuts any suggestion that she has a property interest superior to that of U.S. Bank.

### C. Compliance With the Deed's Pre-Litigation Notice Provision

Finally, even when one sets aside the meritless nature of the claims Jessup makes here, the Court is hard-pressed to see how Jessup can maintain any action at all—meritorious or not—given that the Deed contains a clear condition precedent to bringing a legal challenge to Progressive Funding's assignment, and Jessup failed to satisfy this condition prior to filing the instant complaint. (*See* Def.'s Mem. at 10-12.) Paragraph 20 of the Deed lays out what Jessup must do before she can initiate this or any similar litigation relating to the Deed. It provides:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Deed ¶ 20.) Paragraph 15 further mandates that any such notice be in writing. (*Id.* ¶ 15.) The claims that Jessup asserts in this case arise directly from the transfer of the Note and Deed pursuant to the terms of those documents, and therefore fall squarely within the scope of ¶ 20. Jessup has neither alleged in the complaint that she satisfied

17

this provision, nor addressed this point in opposing U.S. Bank's motion to dismiss. Absent such an allegation, she cannot proceed with her complaint. *See Kerns v. United States,* 12cv490, 2012 WL 5877479 (E.D. Va. Nov. 20, 2012) (finding that identical language barred plaintiff's suit where he failed to plead any facts showing he had complied with the notice provision).

IV.   **CONCLUSION**

Jessup's complaint is predicated on insufficient factual allegations offered to support untenable legal theories. Moreover, and in any event, this action cannot be maintained absent proof that Jessup has provided the requisite pre-litigation notice. Consequently, this Court will grant Defendant U.S. Bank's motion to dismiss and will dismiss Jessup's claims against U.S. Bank with prejudice. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (a trial court can dismiss an action with prejudice if it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.") (internal quotation marks and citation omitted). Furthermore, because Jessup's claims against Progressive Funding are predicated on the same facts and legal arguments as her claims against U.S. Bank, and it is "patently obvious" that Jessup cannot prevail on her claims against Progressive Funding either, the Court will *sua sponte* dismiss her complaint against Progressive Funding as well. *See Baker v. U.S. Parole Comm'n*, 916 F.2d 725, 726-27 (D.C. Cir. 1990) (affirming trial court's *sua sponte* dismissal of complaint where "plaintiff has not advanced a shred of a valid claim" and noting that allowing the case to proceed "can only lead to a waste of judicial resources."). Accordingly, as stated in the

accompanying order, U.S. Bank's motion to dismiss is **GRANTED**, and the complaint is **DISMISSED** with prejudice in its entirety as to both Defendants.


Date:  March 28, 2014                              *Ketanji Brown Jackson*
                                                    KETANJI BROWN JACKSON
                                                    United States District Judge